UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MILAGROS PÉREZ LAURIDO<br>**Plaintiff**<br><br>vs.<br><br><br>MONSANTO CARIBE, LLC<br>**Defendant** | Civil No.<br><br>**Re:** Intentional/negligent infliction of emotional distress; American with Disabilities Act; recover damages<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff, Milagros Pérez Laurido, through the undersigned attorney and respectfully state, allege and pray:

## INTRODUCTION

1. This is an action to remedy violations of the rights of Milagros Pérez Laurido in view of intentional and/or negligent infliction causing emotional distress; discrimination against a disabled person with respect to the terms, conditions and privileges of employment as proscribed under Title II Americans with Disability Act, 42 U.S.C. §12101 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Act No. 44 of July 2nd, 1985 Equal Employment Opportunity for Persons with Disabilities, 1 L.P.R.A. §501 et seq.; in the alternative recover emotional damages pursuant to P.R. ST. T. 31 §5141.

1

## JURISDICTION AND VENUE

2. The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §1331, this being a civil action arising under the Constitution, laws, or treaties of the United States. This Honorable Court also has supplemental jurisdiction pursuant to 28 USC §1367 over all claims arising under the Constitution and Laws of the Commonwealth of Puerto Rico, as all claims herein presented arise from the common nucleus of operative facts. Venue properly lies in this District Court of Puerto Rico.

3. Notice of Right to Sue was issued and signed by Malcom S. Medley, District Director of the U.S. Equal Employment Opportunity Commission on March 12th, 2015. A true and accurate copy of which is attached hereto as Exhibit 1.

## PARTIES

4. Plaintiff, Milagros Pérez Laurido, is of legal age, married, is and was at all times relevant citizen of the United States of America and resident of the Municipality of Aguadilla, Puerto Rico. Plaintiff's present postal and residential address is HC-06 Box 61945, Aguadilla, Puerto Rico 00603.

5. Defendant, Monsanto Caribe, LLC is a foreign corporation authorized to do business pursuant to the laws of the Commonwealth of Puerto Rico. Defendant's physical address is: 361 St. Francisco Street, Old San Juan, P.R. 00910.

## STATEMENT OF FACTS

6. Plaintiff is an agronomist who commenced working for defendant on 2009; specifically the Isabela facility. As Research Assistant I her duties were: supervise and train temporary workers in corporate, function and site specific procedures that have an effect on seed quality; schedule and supervise field activities from planting to harvest; comply with corporate EPA, USDA and company compliance training requirement in a timely manner; accurately reflect field and seed handling activities in Monsanto's proprietary database; comply with Monsanto's motor vehicle driving policy and submit reports; among other responsibilities.

7. As part of her duties and responsibilities, Plaintiff had to operate a vehicle, specifically a pick-up truck. In June 2009, while Plaintiff was operating defendant's pick-up truck, she suffered a back injury due to the fact that she had to exert more physical force when pulling out the crate which had the materials for sowing because its rear door (tail gate) was damaged. Said crate weighed approximately 8-10 pounds. Dr. Alma Arana evaluated plaintiff and prescribed medications and injections for back pain relief and to lower the muscle inflammation.

8. Regarding the previous allegation, Defendant had knowledge that said pick-up truck's rear door was damaged and needed replacement because, before Plaintiff's incident, it had two replacement orders.

9. By May 2010, Defendant organized and promoted an activity entitled "work-pause", as a means to encourage fraternization among the employees and management personnel, in

Cueva Ventana, in Arecibo, and Punta Guilarte, in Arroyo, P.R. Said activity was created and promoted by means of electronic mail communication from Defendant's address.

10. While being at Punta Guilarte, Plaintiff slipped and fell, severely injuring her back. Plaintiff sought Defendant's approval to seek benefits from Puerto Rico's State Insurance Fund Corporation (hereinafter PRSIFC) (Corporación Fondo del Seguro del Estado-CFSE). Instead, the latter referred the former to the Non-Occupational Temporary Disability Insurance (hereinafter NOTDI) (Seguro por Incapacidad no Ocupacional Temporal-SINOT).

11. The reasons for referring Plaintiff to NOTDI were that Defendant determined that the activity referred in paragraph 6 of this complaint, was not created and sponsored by it; *yet* all those who attended were almost all employees and management personnel. Also, the communication medium used to extend the invitation and promote the activity was the company's official electronic mail address. This circumstance, referring Plaintiff to NOTDI, implied that she had to pay for her medical appointments and medicines which amount to $5,000. NOTDI determined that Plaintiff's case should have been referred to PRSIFC because the activity was created and sponsored by defendant.

12. On August 9th, 2010 Plaintiff had to leave because she was not able to walk due to her chronic back pain which also affected her walking. On August 25th, 2010 plaintiff had to leave work early because she suffered high blood pressure and a sharp chest pain due to the continuous and persistent meritless criticism on her job performance; calling into question the truthfulness of her back injury constituting a humiliating, skeptical, and

disrespectful environment; warning plaintiff in an arbitrary and intimidating manner her job duties; and oral reprimands.

13. From February, 20th 2012 and onward, the incidents that triggered this complaint began to take place. Plaintiff began experiencing situations where Defendant continuously discredited her performance and harassed her to the extent of creating a hostile and intimidating work environment. Specifically, Lourdes Torres, Human Resources Lead, conducted herself towards plaintiff in an extreme and outrageous manner beyond the bounds of acceptable conduct anticipated in the workplace.

14. The above mentioned incidents consist in conduct displayed by Lourdes Torres, due to unreasonable repeated behavior towards plaintiff diminishing the civility expected in the workplace by depreciating plaintiff's reasonable accommodation requests (which were more than one) stating in an arrogant and intimidating manner that: *"the interests of defendant have priority over your* (referring to plaintiff) *interests"*; sent collection letters on December 23rd and 24th, 2014 requesting the payment of $2,430.80 due to an overpayment made by defendant when plaintiff was on medical leave determined by PRSIF; rude and degrading comments towards plaintiff's job performance; was unable to properly aid plaintiff when she requested the Human Resources Department to process the information solicited by the medical insurance company; demanded plaintiff to utilize her allotted vacation days instead of her allotted sick leave when she was on a medical appointment; among others. The fact of requesting plaintiff the payment for the aforementioned amount during December, seriously deprived plaintiff from enjoying Christmastime because she felt harassed and became extremely anxious, concerned and nervous.

5

15. Defendant's employees and/or agents also invaded plaintiff's personal space throwing out her personal belongings; arbitrarily taking disciplinary action against plaintiff; criticizing plaintiff's performance; in a harassing manner constantly reminding plaintiff in an intimidating and arrogant manner that: ***"the interests of defendant have priority over the interests of plaintiff's"*** making plaintiff feel worthless since she saw that her reasonable accommodation requests were not being taken into consideration, among others.

16. On July 16th, 2012, plaintiff requested a meeting in order to discuss defendant's failure to process plaintiff's sick leave benefits with the medical insurance company which was causing anxiety, anguish and an overall emotional distress since she was unable to receive medical treatment including her prescriptions. Instead, the meeting was loaded with unwelcome and hostile attitude displayed by defendant. Later on, on July 20th, 2012 after the medical insurance company requested certain information concerning plaintiff, defendant failed to process and/or provide the requested information, thus exacerbating plaintiff's emotional state.

17. On August 15th, 2012, Plaintiff began medical emotional treatment at PRSIFC until May 22nd, 2014. She sought emotional treatment due to the severity and hostile work environment created by the defendants. Plaintiff's conditions when she was treated at the PRSIF consisted in stress, lack of sleep, high blood pressure, various episodes of hypertension and chest pains. She began psychological treatment on December 2012 with Dr. José Lorenzo.

18. Plaintiff's reasonable accommodation request consisted in a new chair and a photocopier. The chair plaintiff used was not functioning properly because it wobbled aggravating plaintiff's back injury exponentially. On the other hand, regarding the request of a

photocopier, plaintiff had to walk 322 steps, more than ten (10) times a day, on an inclined road in order to use one so she requested one in her office or nearby. Reasonable accommodation was requested on 2009 and it was granted on 2012. Nevertheless, the photocopier granted did not operate properly and, even though plaintiff informed this to defendant, the latter has not corrected it.

19. Due to the fact that plaintiff's back conditions worsened, defendant referred her to PRSIFC. While Plaintiff was on medically ordered sick leave, Defendant's agents or employees would contact Plaintiff to ascertain when she was returning to work with total disregard and/or reckless indifference for Plaintiff's medical treatment, medical condition and recuperation. Defendant's agent's constant pressure contributed to Plaintiff's emotional condition relapses and extended her period of recovery. Also, defendant's medical staff never evaluated personally; instead they evaluated her over the telephone.

20. While Plaintiff was on medical ordered sick leave, Defendant's agents or employees recklessly failed to process Plaintiff's sick leave benefits with the medical insurance company causing more emotional injuries to her. Likewise, when the medical insurance company requested information regarding plaintiff's working conditions or work related questions, the human resources department delayed the submittal of the requested information, exacerbating plaintiff's emotional state and deprived plaintiff from receiving her medical treatment on time.

21. On August 26th, 2014, Plaintiff's back was operated since she was diagnosed for lumbosacral strain. This caused plaintiff to be out on sick leave for approximately two months. Defendant was aware of the aforementioned since plaintiff continued treatment

with the PRSIFC and she timely notified the doctor's determination as to when was acceptable plaintiff's return to work.

22. Defendant knew or should have known of Plaintiff's emotional distress and physical disability as she presented them with timely PRSIFC and private doctor medical certificates and information. As a means to ensure Defendant obtained the aforementioned certificates and/or information, Plaintiff followed defendant's policy by notifying Defendant's nurse informing PRSIFC's determination. In case plaintiff was not able to reach the nurse by phone, she would send it to defendant's electronic mail.

23. Upon her return on March 26th, 2015 Plaintiff provided the documents that authorized her to continue working and the evidence that she had been receiving treatment from the PRSIF. Nevertheless, she was unable to work on said day due to a determination reached by Maritere Crespo (Management Staff) stating that the latter had to evaluate plaintiff's employment condition; referring to her medical condition.

24. On April 1st, 2015, while Plaintiff was working, she received a frivolous, baseless and unsupported memo alleging she failed to notify defendant her absences while she was on PRSIFC; specifically that she did not timely notify defendant's assigned nurse.

25. Plaintiff replied the aforementioned memo stating that she adhered to defendant's demand notifying PRSIFC's determinations proving this by means of the telephone conversations handled between plaintiff and defendant's nurse, emails sent, names of the management staff she spoke to, all of which knew plaintiff's medical condition and, thus, her reasons for sick leave. Furthermore, plaintiff also stated that defendant failed to communicate to her the name and contact information of defendant's new nurse. Nevertheless, this

circumstance did not impede plaintiff to notify defendant until she knew, by third parties, the name and contact information of the new nurse.

26. All of the above situations, which continue to this day, have been causing a tremendous amount of emotional pressure on plaintiff due to the fact that the constant and baseless reprimands; excess emotional pressure perpetrated by management and Lourdes Torres causing a risk to health and safety in the workplace, created a hostile work environment which in turn altered her conditions of employment.

## FIRST CAUSE OF ACTION: DISABILITY DISCRIMINATION
## 42 U.S.C. §§12101 et seq.
## 1 L.P.R.A. §501 et seq.

27. The preceding paragraphs are literally incorporated herein and are made part of this section.

28. The American with Disability Act prohibits discrimination against disabled persons in employment protecting those whose: physical and/or mental impairments substantially limit their abilities to perform one or more "major life activities"; have a record of such impairments; and who are treated as impaired even if they are not impaired. 42 USC §12102(2)(A).

29. According to 42 USCA §12102, the term disability means a physical or mental impairment that substantially limits one or more major life activities of such individual. Furthermore, major life activities include, but are not limited to, walking, lifting and standing. 42 USCA §12102 (2)(A).

30. Title I of the Act prohibits discrimination against a qualified individual with respect to the application process, hiring, advancement, training, compensation, discharge, and other "*terms, conditions, and privileges*" of a job. 42 U.S.C.A. § 12112(a).

31. The term "*discriminate against a qualified individual on the basis of disability*" includes utilizing a method of administration that has the effect of discrimination on the basis of disability. Likewise, not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 42 USCA §12112 (b)(3)(A)(5)(A).

32. To establish hostile work environment claim under ADA, plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter conditions of her employment and create abusive working environment. 42 U.S.C.A. § 12112(a). Colón Fontanez v. Municipality of San Juan, 660 F.3d 17, 25 A.D. Cas. (BNA) 423 (1st Cir. 2011).

33. In the instant case, as described above, defendant unlawfully discriminated against plaintiff, a qualified individual, with respect to her terms, conditions and privileges of her employment because of her back disability and emotional state in violation of 42 U.S.C. §12101 et seq. Plaintiff has developed an emotional disability that manifested itself as major depression, hypertension, and severe anxiety, due to the constant invasion of personal space; undermining her emotional and back disability; arbitrary disciplinary actions; unreasonable repeated behavior towards plaintiff when she requested reasonable accommodation; when defendant inaccurately and constantly alleged plaintiff failed to

notify defendant her absences while she was on PRSIFC; constant disrespect and rudeness; and constant pressures and demands. Thus, these actions made converted plaintiff's working conditions into one that is undesirable and hostile.

34. Plaintiff's physical impairment has manifested itself as back problems due to the accident in 2009 and aggravation in 2010. Plaintiff is in constant and intense pains; she requires multiple and strong medication to manage it. Plaintiff's trauma to her back resulting from the work accident was so severe that she underwent back surgery in August 2014.

35. Defendant's pattern of discriminatory and persecution conduct towards Plaintiff, as described above, interfered with her ability to perform the essential functions of her position, and was so severe and pervasive that it caused Plaintiff to seek emotional treatment at PRSIF and private psychologist.

36. Defendant is subject to the obligations set forth in the ADA for perpetuating a hostile environment because of her disability, as previously detailed.

## CIVIL RIGHTS ACT OF 1964
## TITLE VII

37. The preceding paragraphs are literally incorporated herein and are made part of this section.

38. The Supreme Court has stated that Title VII affords employees the right to work in an environment that is free from discriminatory intimidation, ridicule and insult. See, Meritor Sav. Bank v. Vinson, 477 US 57 (1986).

39. The Title VII standard requires an employee to prove that: **(1)** the employee was disabled within the meaning of the Act; **(2)** the employee was subject to unwelcome harassment because of the disability; **(3)** the harassment affected a term or condition of employment; and **(4)** the employer knew or should have known about the harassment but failed to take prompt remedial action. The employee must prove that the harassment affected a term, condition, or privilege of employment by showing that it was severe or pervasive, and that it created a work environment that a reasonable person would consider to be abusive.

40. Hostile work environment claims brought under the ADA are analyzed using the standards applied to similar claims brought under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101. Hawkins v. Smith, 46 F. Supp. 3d 1175 (N.D. Okla. 2014).

41. The physical demands and emotional pressure plaintiff was subjected to; questioning the truthfulness of her disability; reckless management with the medical insurance company; failure to provide reasonable accommodation within time; falsely accusing plaintiff of not complying with her obligation to notify defendant of her sick leave, among the other allegations previously described, created a hostile work environment which affected her employment conditions. Even though defendant knew, or should have known about the harassment, it failed to take prompt remedial action, thus perpetuating a hostile work environment and inflicting emotional distress on plaintiff.

## *SUPPLEMENTAL JURISDICTION*

## **SECOND CAUSE OF ACTION: DAMAGES P.R. ST. T. 31 §5141**

42. The preceding paragraphs are literally incorporated herein and are made part of this section.

43. Section 5141 of Puerto Rico's Civil Code states that *a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity*.

44. A claim under Puerto Rico statute governing tort liability for damages caused by negligence requires that the plaintiff prove three prima facie elements: **(1)** a negligent act or omission; **(2)** damages; and **(3)** a causal relationship between them. Also, when a claim under Puerto Rico statute governing tort liability for damages caused by negligence is based on an omission, the defendant must have had a duty to act. Finally, liability will only arise based on a failure to act if the damages complained of were reasonably foreseeable to the defendant.

45. Following the aforementioned elements, one must reasonably conclude that, based on the employer-employee relationship between the parties, and the combination of the incidents above mentioned, defendant omitted to properly provide, on a timely manner, the reasonable accommodation requested; to handle with diligence the requests from the insurance company; harassing plaintiff for allegedly failing to notify defendant PRSIFC determinations; and the other actions inflicted by defendant resulted in emotional damages to plaintiff. Furthermore, her back injuries, which started in 2009 due to the work related

activity, worsened in 2010 due to another work related injury. Defendant, being plaintiff's employer, had the duty to act promptly, but failed to do so.

46. The aforementioned actions perpetrated by defendant caused physical and emotional damages to the extent of seeking the assistance of private psychologists. In the alternative, if it were determined that defendant did not harass plaintiff in the workplace due to her disability plaintiff requests or that their actions did not create a hostile environment, which plaintiff denies, under the facts stated in this complaint, that defendant be ordered to compensate the emotional, physical and economic damages inflicted on plaintiff which amount to $1,000,000 pursuant to ST. T. 31 §5141.

**PETITION FOR RELIEF**

**WHEREFORE,** Plaintiff, Milagros Pérez Laurido, demands judgement against Defendant and respectfully prays and requests that this Honorable Court find in favor of Plaintiff and grant the following:

➢ Compensatory damages for the amount no less than one million dollars ($1,000,000).

➢ Reasonable amount for attorney fees and the costs of litigation.

➢ Jury tries all issues of facts.

➢ Plaintiff be granted any other relief that he may be entitled to as a matter of law.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that on, May 28th, 2015, a true and exact copy of the foregoing was filed with the Clerk of this Court using the CM/ECF system, which will send notice of such filing to all relevant parties.

In Aguadilla, Puerto Rico, this day of May 28th, 2015.

        s/Shakira M. Santiago Rodríguez

        Shakira M. Santiago Rodríguez

        USDC-300305

        P.O. Box 364303

        San Juan, P.R. 00936

        T. 787.529.6105

        E. lcdastgorodriguez@yahoo.com

        Bufete y Notaría Mari Pesquera, C.S.P.

        Apartado 326 Rincón, P.R. 00677

        T. 787.882.1734-F. 787.882.1694